## IVIE MICKLE v. THE STATE.

### No. 4957.   Decided June 27, 1919.

**1.—Murder—Continuance—Contest of Application.**

It is permissible under the statute for the State to traverse an application for continuance on the question of diligence, but not for the purpose of showing that the absent witnesses were not present at the scene of the difficulty;  besides, the court should have permitted the filing of defendant's supplemental motion for a continuance, and if the facts therein stated were true and not controverted by the State, the case should have been postponed or a change of venue ordered, under the facts of the instant case, where the record showed that defendant was a negro and the deceased a white man, and that race feeling and prejudice played a prominent part in the disposition of the case;  the judgment is therefor reversed and the cause remanded.

**2.—Same—Practice in District Court—Jury Commission—Rules of the Street Car Company.**

There was no error in refusing to quash the indictment because no negroes were on the jury commission or the grand jury; and there was no error in not submitting a charge with reference to the rule of the Street Car Company.

**3.—Same—Rehearing—Practice on Appeal.**

In capital cases this court will assume more latitude in dealing with technicalities than in ordinary felony cases, and in the instant case, where the circumstances surrounding the trial were such as to satisfy this court, that the trial was affected by prejudice and feeling, the judgment will be reversed and the cause remanded.

**4.—Same—Practice on Appeal.**

Where, upon motion for rehearing it appeared that a part of the original opinion was probably erroneous the same will be withdrawn, otherwise the motion for rehearing by the State is overruled.

Appeal from the District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from conviction of Murder; penalty, death.

The opinion states the case.

*Marsene Johnson, Elmo Johnson* and *Roy Johnson* for appellant. —On question of application for continuance and suplimental motion to change venue; Lane v. State, 28 S. W. Rep., 202; Roquemore v. State, 54 Texas, Crim. Rep., 592; Mac Weaver v. State, 52 id., 11.

On question of impartial jury and fair trial: Steagall v. State, 22 Texas Crim. App., 464; Calvin v. State, 25 Texas, 789.

On question of race discrimination and jury commission: Carter v. State, 177 U. S., 442; Hemphill v. State, 75 Texas Crim. Rep., 63.

On question of insufficiency of evidence; Garner v. State, 45 Texas Crim. Rep., 308.

*E. A. Berry,* Assistant Attorney General, *Chas. H. Newfold* and *W. E. Crawford,* for the State.—On question of continuance; Kuykendall v. State 60 Texas Crim. Rep., 254, 131 S. W. Rep., 1099; Hyde v. State, 16 Texas, 445.

LATTIMORE, JUDGE.—In this case appellant was convicted in the District Court of Galveston County of the offense of murder and his punishment fixed at death.

Appellant is a negro and was convicted of the murder of a white man under such circumstances as to make it a case in which race feeling and prejudice could very easily play a prominent part in the disposition of the case. The parties to the killing were strangers to each other as far as the record discloses. Deceased was

36—85 T. C. R.

a street car conductor and his car was boarded on the night of November 15, 1917 by the appellant, who was eating a sandwich. When asked to pay his fare by deceased, appellant said he did not want to get his clothes greasy, and deceased did not then further press for payment of the fare, but a little later again approached appellant and asked for payment and was told by appellant that he would pay when he got ready. Shortly thereafter deceased stopped his car and informed appellant that he must pay or get off. Some friend of appellant offered, to pay, and did pay the fare for him over the apparent protest of appellant who said he had plenty money of his own. A little later the duties of the deceased called him away from the rear platform of the car where all the controversy had taken place and where appellant was still standing, and when deceased returned to said rear platform he found appellant standing in the place where the conductor usually stands to help passengers on and off the car. Thereupon deceased requested appellant to move and most of the witnesses say that the request was refused with the statement by appellant "that he would not move for no damn white man." According to all the witnesses, either at this moment, or just subsequent and after another remark by appellant, deceased caught hold of the appellant and attempted to shove him off the moving car. There was a scuffle, a momentary clinch between the men and appellant was forcibly ejected from the car, falling on the ground on his side. He at once sprang up and ran after the moving street car and all the witnesses but one, agree that he caught the car, sprang upon the step, struck the conductor one blow, then jumped down and ran away. The one witness who disagreed about this matter said that he was on the rear platform and saw a knife in appellant's hand just before the deceased attempted to put him off the car, and that when the parties clinched and just before the appellant was thrown, off, that he saw him cut deceased twice. It was undisputed that deceased was cut to the cavity in two places on his breast and that he died in a few moments after the difficulty.

Appellant asked for a continuance because of the absence of two witnesses, stating in his application that said witnesses were present and would testify to the facts set out which would tend to exculpate him. The State was permitted to traverse said application, not only as to diligence, which is permissible under the statute, but also as to the fact of the presence of said witnesses at the scene of the killing, and was permitted to introduce witnesses on a hearing of said traverse for the purpose of showing that said absent witnesses were not present at the scene of the difficulty. This was error on the part of the trial court. Attarway v. State, 31 Texas Crim. App., 475; Lane v. State, 28 S. W. 202; Rucker v. State, 7 Texas Crim. App., 549; Testard v. State, 26 Texas Crim. App., 260; Articles 612 and 613, C. C. P.

The court should also have permitted the filing or appellant's supplemental motion for a continuance, and if the facts therein stated were true and not controverted by the State the case should have been postponed or a change of venue ordered. The appellant is a negro, his victim a white man and it is alleged that such publicity had been given the State's side of the case during the barely ten days elapsing from the date of the homicide to the trial that a strong public sentiment had been created and existed against appellant. That this was substantially true is made apparent from the fact that at once upon his arrest on the day following the killing appellant was taken to the county jail of another county for safe keeping. When indicted by the grand jury on the 19th, three days after the killing, and brought back to Galveston in order that the statutory requirement for his presence in the setting of his case and the appointment of counsel to represent him, might be met, it further appears that as soon as this was done he was then sent back to jail of Harris County. It also appears that a week later, when the day of his trial came that a strong guard of soldiers were deemed necessary for his protection when brought back to Galveston and that they met him at the depot and escorted him to the court house and were placed about the court room the blinds and shutters of which were drawn. The trial judge approves the bill of exceptions setting forth these matters, with the statement that it was for the protection of the appellant that the soldiers were present and these precautions were taken. It appears to us that if public sentiment was such as to necessitate the course of conduct above outlined on the part of the officers of the law, that it is difficult to believe that at that time and under those circumstances the accused could obtain that fair' and impartial trial which is the proud boast and the guaranteed right of all of our citizens. Impertinence and insolence on the part of negros to white people are recognized as fruitful sources of aggravation, and when it appears, as in the instant case, that such conduct on the part of appellant caused the fatal affray, great care and caution should be exercised before trying the accused at a time and place when the passions of the people of that locality have been so recently stirred as that it was believed by the authorities to have not yet sufficiently subsided to make the life and limb of the accused free from danger at the hands of the populace.

Aside from the fact that appellant was a negro and that his language and conduct toward the deceased was inexcusable, it is clear that deceased was guilty of the first act of violence when he attempted to eject appellant from the moving car. All that had preceded this was merely language used. Under the testimony of the witness Easton the theory of provoking the difficulty clearly appears, and if appellant armed with his knife used language and conduct toward the deceased reasonably  calculated to provoke him

to make an attack upon appellant so that he might thereby have a pretext to kill him, this theory should be presented in an appropriate charge to the jury. If, on the other hand the acts of deceased in ejecting appellant from the moving car caused in the mind of appellant sudden passion and acting under the immediate influence thereof, and as a result thereof, he cut and thereby killed the deceased, he might not be guilty of more than manslaughter, and this phase of the case should be presented to the jury by a charge applying the law to the facts.

We think there was no error in the court's action in refusing to quash the indictment because no negroes were on the jury commission or the grand jury.

Nor do we think the issues in the case should be confused by charging anything with reference to the rules of the street car company, which were unknown to appellant and could not have influenced his conduct.

For the errors indicated the judgment of the trial court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

ON REHEARING.

June 27, 1919.

MORROW, JUDGE.—In view of the able motion for rehearing filed by the State's attorneys we have carefully reviewed our opinion and the entire record in the above case and are unable to disabuse our mind of the belief that it is impossible to consider this record without concluding substantially that in the main we were correct in the former opinion.

In capital cases this court will assume more latitude in dealing with technicalities and distinctions than in ordinary felony cases. We do not believe the circumstances surrounding this trial, as disclosed by this record, are such as to satisfy us that the trial was had unaffected by prejudice and feeling and that in such case our duty is plain. When in doubt as to such matters in a capital case we feel that the doubt should be resolved in favor of another trial under different circumstances and further removed from the evident prejudice and feeling so manifest in the record before us.

We have concluded that we were in error in that part of our opinion in which we said: "If on the other hand, the acts of deceased in ejecting appellant from the moving car, caused in the mind of appellant sudden passion, and acting under the immediate influence thereof, and as a result thereof, he cut and thereby killed, the deceased, he might not be guilty of more than manslaughter. and this phase of the case should be presented to the jury by a

charge applying the law to the facts.'' Upon mature reflection we have concluded that this part of the opinion might be erroneous and the same will be withdrawn. Otherwise the motion for rehearing will be overruled and the judgment of reversal of the case will stand.

*Overruled.*